ENDLEMAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 28, 1898.)

No. 357.

1. CRIMINAL LAW—MOTION TO QUASH INDICTMENT—REVIEW.
    A motion to quash an indictment is ordinarily addressed to the discretion of the court, and the overruling thereof is not ordinarily assignable as error.

2. CONSTITUTIONAL LAW—TERRITORIES—AUTHORITY OF CONGRESS.
    Congress has full legislative power over the territories, unrestricted by the limitations of the constitution.

3. INTOXICATING LIQUORS—UNLAWFUL SALES IN ALASKA.
    The act of May 17, 1884, prohibiting the sale of liquors in Alaska except under certain regulations, is valid, being within the plenary legislative power possessed by congress over the territories.

4. SAME—INDICTMENT.
    Under the Oregon Criminal Code, in force in Alaska, which dispenses with technicalities in pleading an indictment charging that defendant, on or about

a certain date, and at other times before, did sell "to John Doe and Richard Roe, and to divers other persons," whose real names are unknown "an intoxicating liquor, called 'whisky,' to wit, one glass, pint, quart, gallon, of said liquor (the real quantity is to the grand jurors unknown)," etc., is not bad as charging more than one offense.

5. SAME—PAYMENT OF TAX.
   The payment of the special tax levied by the general government on the business of retailing liquors is no defense to a prosecution for illegally selling liquors in Alaska.

6. CRIMINAL LAW—INSTRUCTIONS—OPINION OF JUDGE.
   A statement of a federal judge that he does not see any way in which the defendants can be acquitted, while not to be approved, is no ground for reversal where he states the rules of law correctly, and expressly leaves the matters of fact to the jury.

In Error to the District Court of the United States for the District of Alaska.

Crews & Hannum and C. S. Blackett (W. E. Crews, of counsel), for plaintiffs in error.

Burton E. Bennett (H. S. Foote, of counsel), U. S. Dist. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. It is enacted, in section 14 of the act of May 17, 1884, providing a civil government for Alaska (23 Stat. 24, 28), that "the importation, manufacture, and sale of intoxicating liquors in said district except for medical, mechanical and scientific purposes is hereby prohibited under the penalties which are provided in section nineteen hundred and fifty five of the Revised Statutes for the wrongful importation of distilled spirits. And the president of the United States shall make such regulations as are necessary to carry out the provisions of this section." By section 1955 of the Revised Statutes the president is given "power to restrict and regulate, or to prohibit, the importation and use * * * of distilled spirits into and within the territory of Alaska. * * * And any person willfully violating such regulations shall be fined not more than $500, or imprisoned not more than six months." By the executive order of May 4, 1887, the landing of intoxicating liquors at any port or place in the territory of Alaska is prohibited except upon a permit of the chief officer at such port or place, to be issued upon evidence satisfactory to such officer that the liquors are imported and are to be used solely for sacramental, medicinal, mechanical, or scientific purposes. By the executive order of March 12, 1892, the sale of intoxicating liquors for medicinal, mechanical, and scientific purposes can be made only by such persons in the territory as shall have obtained a special permit from the governor of the territory to sell intoxicating liquors therein upon certain specified conditions.

The appellant and one Edward Lord were indicted by the grand jury in the district court of the United States for the district of Alaska, in December, 1896, for selling intoxicating liquors within said district. The indictment charges that:

"The said Max Endleman and Edward Lord, at or near Juneau, within the said district of Alaska, * * * on or about the 7th day of December, 1896, and at divers other times before, did unlawfully and willfully sell to John Doe

and Richard Roe and to divers other persons, whose real names are to the grand jurors unknown, an intoxicating liquor, called whisky, to wit, one glass, pint, quart, gallon, of said liquor (the real quantity is to the grand jurors unknown), without having first complied with the law concerning the sale of intoxicating liquors in the district of Alaska."

The defendants moved to quash this indictment upon the grounds (1) that two or more offenses were charged in the same count and same indictment; (2) that the indictment was fatally defective for duplicity; (3) that two or more offenses were charged in the same indictment in the same count against two defendants, without segregating the offenses committed by each defendant; (4) that the indictment was too vague, indefinite, and uncertain to afford the accused proper notice of the crime charged against them to enable them to properly plead or prepare their defense. The motion to quash the indictment was denied, and thereupon the defendants interposed a demurrer on the grounds: (1) That the court had no jurisdiction over the subject-matter of the action; (2) that more than one crime is charged in the indictment against the defendants in the same count; (3) that the facts stated in the indictment do not constitute a crime, or any crime, against the defendants, or either of them. The demurrer was overruled, and the defendants plead not guilty. At the trial the defendants moved the court to require the district attorney to elect upon what particular sale set forth in the indictment he would rely for a conviction, which motion was denied. Upon the first trial the jury was unable to agree. Upon the second trial the jury found the defendant Max Endleman guilty as charged in the indictment, and Edward Lord not guilty. The defendant Endleman moved in arrest of judgment and for a new trial, and these motions were denied.

The errors assigned, 16 in number, relate to the sufficiency of the indictment as against the objections that were raised by the motion to quash, by the demurrer, and by the motion in arrest of judgment; errors occurring during the progress of the trial, to which exceptions were taken; and errors in the instructions of the court to the jury. The objections raised by the motion to quash the indictment may be dismissed with the observation that a motion to quash an indictment is ordinarily addressed to the discretion of the court, and therefore a refusal to quash cannot generally be assigned as error. U. S. v. Rosenburgh, 7 Wall. 580; U. S. v. Hamilton, 109 U. S. 63, 3 Sup. Ct. 9; Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617; Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508.

In support of the first ground of demurrer, it is contended that the law upon which the prosecution is based is unconstitutional, because, among other things, the government of the United States can exercise only those specific powers conferred upon it by the constitution; that the constitution guaranties to the citizens the right to own, hold, and acquire property, and makes no distinction as to the character of the property; that intoxicating liquors are property, and are subjects of exchange, barter, and traffic like any other commodity in which a right of property exists; that, inasmuch as the power to regulate commerce was committed to congress to relieve it from all restrictions, congress cannot itself impose restrictions upon com-

merce by prohibiting the sale of a particular commodity; that, if congress has the power to regulate the sale of intoxicating liquors within the territories as a police regulation, it can only enact laws applicable to all the territories alike. The answer to these and other like objections urged in the brief of counsel for defendant is found in the now well-established doctrine that the territories of the United States are entirely subject to the legislative authority of congress. They are not organized under the constitution, nor subject to its complex distribution of the powers of government as the organic law, but are the creation, exclusively, of the legislative department, and subject to its supervision and control. Benner v. Porter, 9 How. 235, 242. The United States, having rightfully acquired the territory, and being the only government which can impose laws upon them, has the entire dominion and sovereignty, national and municipal, federal and state. Insurance Co. v. Canter, 1 Pet. 511, 542; Cross v. Harrison, 16 How. 164, 193; National Bank v. Yankton Co., 101 U. S. 129, 133; Murphy v. Ramsey, 114 U. S. 15, 44, 5 Sup. Ct. 747; Late Corporation of Church of Jesus Christ of Latter-Day Saints v. U. S., 136 U. S. 1, 42, 43, 10 Sup. Ct. 792; McAllister v. U. S., 141 U. S. 174, 181, 11 Sup. Ct. 949; Shively v. Bowlby, 152 U. S. 1, 48, 14 Sup. Ct. 548. Under this full and comprehensive authority, congress has unquestionably the power to exclude intoxicating liquors from any or all of its territories, or limit their sale under such regulations as it may prescribe. It may legislate in accordance with the special needs of each locality, and vary its regulations to meet the conditions and circumstances of the people. Whether the subject elsewhere would be a matter of local police regulation, or within state control under some other power, it is immaterial to consider. In a territory all the functions of government are within the legislative jurisdiction of congress, and may be exercised through a local government, or directly by such legislation as we have now under consideration.

The contention that the law is in restraint of trade and commerce, and therefore in conflict with the doctrine declared by the supreme court in Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, is also without merit. It was determined in that case that the law of a state prohibiting the sale of intoxicating liquors except for pharmaceutical, medical, chemical, or sacramental purposes, and under a license from a county court of the state, was, as applied to a sale by the importer, and in the original packages or kegs, of liquors manufactured and brought from another state, unconstitutional and void, as repugnant to the clause of the constitution granting to congress the power to regulate commerce with foreign nations and among the several states. In pursuance of this decision, and in recognition of the conditions in certain localities, congress provided, in the act of August 8, 1890 (26 Stat. 313):

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory or remaining for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

This law was declared in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, to be a valid and constitutional exercise of the legislative power conferred upon congress; and a provision of the constitution of Kansas, which provided that the manufacture and sale of intoxicating liquors should be forever prohibited in that state except for medical, scientific, and mechanical purposes, and an act passed in enforcement thereof, were sustained, on the ground, substantially, that congress had determined that it would interpose no obstacle to such legis-·lation; ·that, in the regulation of commerce, no reason was perceived why congress might not provide that certain designated articles of interstate commerce should be governed by a rule that would devest them of that character at an earlier period of time than would otherwise be the case. In other words, there was no reason why the law of a state or territory, prohibiting the sale of intoxicating liquors, should not take effect immediately on the arrival of the article within its territorial jurisdiction.

The second ground of demurrer is that more than one crime is charged in the indictment against the defendant in the same count. Section 7 of the act providing for a civil government for Alaska (23 Stat. 24, 25) declares that the general laws of the state of Oregon then in force are to be the law of said district. The Criminal Code of Oregon dispenses with all technical requirements in criminal pleading, and provides that the indictment is sufficient if it can be understood therefrom that the crime was committed at some time prior to the finding of the indictment, and within the time limited by law for the commencement of an action therefor; that the act or omission charged as the crime is clearly and distinctly set forth, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended; that the act or omission charged as the crime is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case, and no indictment is insufficient, nor can the trial, judgment, or other proceedings therein be affected, by reason of a defect or imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendants upon the merits. Cr. Code, § 80.

Have the substantial rights of the defendant been prejudiced by any defect or imperfection in either the matter or form of the charge contained in the indictment? We think not. In Stors v̇. State, 3 Mo. 9, the indictment charged the defendant with selling spirituous liquors without a license to two persons named, and to divers other citizens to the jurors unknown. The ·defendant demurred to the indictment, on the ground that it contained only one count, and that several distinct offenses were charged in that count. The court held that there was no force in the objection, and that it was to the interest of the defendant to consider the several acts as constituting but one offense, whether they were or were not committed at the same instant of time, which might well have been. It was also held that, as the charge did not amount to a felony, the prosecutor could not be called upon at the trial to elect upon which charge he would proceed. In People v. Adams, 17 Wend. 475, the indictment was for selling liquors without a license, and charged that the defendant,

on the 1st day of June, 1836, and on divers other days and times between that day and the day of finding the indictment, sold by retail, to divers citizens of the state, and to divers persons to the jurors unknown, spirituous liquors and wines, to wit, three gills of brandy, three gills of wine, three gills of gin, three gills of whisky, three gills of cordial, three gills of bitters, three gills of rum. It was objected that more than one offense was charged in one count. The court held that the objection was not true in point of fact. The whole charge was deemed to be but one transaction, and the allegation that the offense was committed on a particular day, and also on divers other days, was good as to the day certain, and the residue was rejected as surplusage. In Osgood v. People, 39 N. Y. 449, an indictment charged the defendant with unlawfully selling liquor to different persons on different days. The defendant was convicted of one offense. It was objected that the defendant was charged with several distinct offenses, and that the indictment was bad for uncertainty and duplicity. The indictment was upheld, and the conviction sustained, on the authority of People v. Adams, supra. It was further said that the verdict was conclusive evidence that neither at that time nor at any other time had the defendant been proved to have committed more than one offense for which he was on trial. In State v. Anderson, 3 Rich. Law, 172, the indictment charged in one count various acts of retailing liquors without a license as constituting a single offense. "In this," said the court, "there is no duplicity or misjoinder, but rather a favor to the defendant in enumerating, as aggravations or characteristic repetitions of the principal act, other acts, each of which might have been alleged as a separate offense." In Nelson v. U. S., 30 Fed. 112, the act constituting the offense was, as in the present case, the sale of intoxicating liquors in Alaska, and involved the construction of the same statute. The indictment charged that the defendant did "at the town of Sitka, within said district, sell one pint of brandy, one pint of wine, one pint of whisky, one pint of beer, contrary to the statute," etc. The name of the purchaser was not given, and the omission was one of the grounds of objection to the indictment. The case was taken on a writ of error to the district court of the United States for the district of Oregon, and that court held that the name of the purchaser was not a necessary ingredient of the offense, particularly where the prohibition to sell is general, irrespective of persons, and that the omission could not be alleged as error. See, also, opinion of the court in State v. Hodgson, 66 Vt. 134, 28 Atl. 1089, adopted as the views of the supreme court of the United States in Hodgson v. State of Vermont (recently decided) 18 Sup. Ct. 80. It is clear, from these authorities, that the defendant, having been convicted of but one offense, has no substantial ground of objection to the indictment on the ground that it charges more than one offense in the same count. These authorities also dispose of the objection that the court refused to require the district attorney to elect upon what particular sale set forth in the indictment he would rely for conviction.

It is assigned as error that the court refused to allow the defendant to introduce in evidence a special tax receipt issued to the defendant by the collector of internal revenue for the district of Oregon, for

$25, on the business of retail liquor dealer at Juneau, Alaska, for the year commencing July 1, 1896, and ending June 30, 1897. The receipt contained the following printed indorsement:

"This stamp is simply a receipt for a tax due the government, and does not exempt the holder from any penalty or punishment provided for by the law of any state for carrying on the said business within such state, and does not authorize the commencement nor the continuance of such business contrary to the laws of such state, or in places prohibited by municipal law. See section 3243, Rev. St. U. S."

The section of the Revised Statutes to which reference is made by the printed indorsement declares specifically that the payment of the tax does not authorize the commencement or continuance of any trade or business contrary to the laws of the state or in places prohibited by municipal law. This was also determined by the supreme court in McGuire v. Com., 3 Wall. 387, and License Tax Cases, 5 Wall. 462. The defendant in this case was being prosecuted for violating the local or municipal law of the territory, and the circumstance that the local law for Alaska and the national revenue law were both enacted by congress is immaterial in view of the provision in the latter that the local law must prevail in determining whether a business for which a special tax is required may or may not be carried on in a given locality. In answering this charge, the payment of the special tax required by the general government for carrying on the business of a retail liquor dealer was therefore clearly irrelevant and immaterial.

In charging the jury, the court said:

"The federal courts allow the judges sometimes to give an opinion on the evidence. I gave my judgment to the other jury, and I will give it to you. I do not see any way that these defendants can be acquitted. Notwithstanding, I charge you that you are the judges of the evidence, and from that evidence it is for you to say whether or not they, or either of them, are guilty."

It is objected that the court had no right to express an opinion as to the guilt or innocence of the defendant. The language used by the court, as to the guilt of the defendant, is certainly not to be commended. While it is true that the federal judges have the right, in criminal cases, to express to the jury their opinion as to the guilt or innocence of one accused of crime and on trial, and advise them as to the facts of the case, still the supreme court has repeatedly admonished the trial courts that this should be done with great care and circumspection.

In the case of Starr v. U. S., 153 U. S. 614, 627, 14 Sup. Ct. 919, 924, the supreme court, in expressing in unmistakable terms its disapprobation of the language used by the trial judge in his charge to the jury, said:

"Whatever special necessity for enforcing the law in all its rigor there may be in a particular quarter of the country, the rules by which and the manner in which the administration of justice should be conducted are the same everywhere, and argumentative matter * * * should not be thrown into the scales by the judicial officer who holds them."

While the remarks of the learned judge are subject to criticism, and we are compelled to express our disapproval of it, still as no rule of law was incorrectly stated to the jury, and the matters of fact were ultimately submitted to the determination of the jury, we do

not consider that it was reversible error. Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. 1142; Lovejoy v. U. S., 128 U. S. 171, 173, 9 Sup. Ct. 57.

The other errors assigned are so obviously without merit as not to require discussion. The judgment of the district court is affirmed.