Aníbal Natal ROJAS, Petitioner,

v.

Gerardo DELGADO, Warden, Penitentiary of the Commonwealth of Puerto Rico, Respondent.

Civ. No. 831–68.

United States District Court
D. Puerto Rico.

Aug. 20, 1969.

Santos P. Amadeo, San Juan, P. R., for plaintiff.

William Arias, San Juan, P. R., for the Commonwealth of Puerto Rico.

## ORDER

## SUMMARY OF THE FACTS OF THE CASE

CANCIO, Chief Judge.

1—The petitioner Aníbal Natal Rojas, is of legal age, and a citizen of the United States, residing in Puerto Rico.

2—The respondent is of legal age, a United States citizen residing in Puerto Rico, and is the Warden of the Penitentiary of the Commonwealth of Puerto Rico.

3—Petitioner is under the custody of respondent pursuant to a sentence of two to ten years pronounced by the Superior Court of Puerto Rico, Arecibo Part, following conviction in case G–64–1250 for robbery.

4—He appealed from said sentence to the Supreme Court of Puerto Rico, assigning as error the following charge to the jury:

"In this case the defendant has testified; he has taken the witness stand. Therefore, his testimony should be taken into consideration as that of any other witness; taking into account; of course, the interest that every defendant, has in his own case".

On January 16, 1967 the Court affirmed the conviction.[1]

5—On March 4, 1967, petitioner filed before the Supreme Court of Puerto Rico a motion in the nature of a writ of coram nobis. This motion was denied on March 13, the same year. Another motion of like nature filed before the same court on March 27, 1967 was denied on May 19, 1967.

6—On the present petition for a writ of habeas corpus, it is alleged that the trial and judgment entered against him are null and void since a) the trial court's instruction to the jury, above mentioned,[2] deprived him of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States since such instruction injected doubts in the mind of the jury as to the credibility of his testimony and consequently impaired his constitutional guarantees of the presumption of innocence and reasonable doubt, impaired his constitutional rights to testify as a witness on his behalf, discriminatorily failed to place his testimony on the same footing as all other witnesses in regard to their credibility, b) because the holding of the Supreme Court of Puerto Rico, establishing in the case a new rule of constitutional law with prospective application, but refusing to apply the same to it, deprived him of his right to an effective appeal guaranteed by the due process clause of the Fifth and Fourteenth Amendments to the Constitution, and is in conflict with Article III of the same as construed by the Supreme Court of the United States in the case of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and

c) because in holding that it would be reversible error to give the challenged instruction henceforth, but that in his case such instruction was a harmless error in view of the circumstances of his case since that in order for an error involving the denial of a federal constitutional right to be held harmless in a state criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction, and "the Supreme Court of Puerto Rico failed to prove beyond a reasonable doubt that the challenged instruction did not contribute to petitioner's conviction under the facts of his case."

7—An Order to Show Cause why the petition should not be granted was issued, and defendant was ordered to appear on February 14, 1969.

8—A "Return to Order to Show Cause" was filed by defendant on February 5, 1969.

## CONCLUSIONS OF LAW

1—Petitioner's prayer that this Court issue a writ of habeas corpus and order his discharge from respondent's custody cannot be granted. Petitioner was not denied his constitutional right to a fair and impartial trial, nor any other accorded him by the Constitution.

2—The Supreme Court of Puerto Rico was under no constitutional compulsion to apply the new rule of law to petitioner's case. In criminal litigation concerning constitutional claims, a court may, in the interest of justice, make a new judicial rule prospective

---

1. In so doing the Court said:

"Although we approved instructions like this one in People v. Febres, 90 P.R.R. (1964), and in People v. Morales, 39 P.R.R. 27, 32, 33 (1929), we have concluded that it is not wise to continue in the future the practice of thus charging the jury since it is not proper nor necessary to so qualify the testimony of the defendant. To leave to the opinion of the jury the weighing of that testimony constitutes more

sound justice. This ruling will only apply to persons whose trial shall begin on a date subsequent to the date of his judgment".

"After examining the circumstances of the instant case we do not believe that the objected instruction was so prejudicial as to give rise to the refusal of the judgment rendered in this case by the Superior Court, Arecibo Part, on January 21, 1965".

2. Page No. 471.

where the exigencies of the situation require such an application. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. A court has the power to hold that the rule established by an overruling decision will operate in the future only and will not even be operative upon the parties to the overruling case. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); also England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440, where the Supreme Court, in expressing its power under Article III of the Constitution of the United States to adopt the technique of purely prospective overruling, held that the rule announced would not be applied to the litigants therein but would be applied only prospectively.

■ 3—There is no constitutional objection to overruling a case purely prospectively. Great Northern R. Co. v. Sunburst Oil and Refinery Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). A state court can make a choice for itself, in overruling an earlier decision, as to whether the new law declared by it should operate prospectively only or should apply also to past transactions. Ibid.

The United States Supreme Court affirmed a state court decision overruling an earlier case involving the construction of a state railroad rate fixing statute, where the state court, in overruling the earlier case, refused to make the new rule retroactive and held that the parties to the case under consideration were controlled by the law as established in the overruled case. Great Northern R. Co. v. Sunburst Oil and Refinery Co., supra.

■ 4—The Federal Constitution does not require that any retroactive effect be given to an overruling decision. It has been held that it is not constitutionally objectionable for a state court to declare that earlier precedents are to be considered overruled wholly prospectively and that the parties to an overruling case are governed by the old rule. Linkletter v. Walker, supra. In this case the court recognizes that the retroactive op-

eration of an overruling decision is not required by the Constitution, and that to what extent a new rule adopted in an overruling decision will be given retroactive effect is not a matter of constitutional compulsion, but a matter of judicial policy to be determined by the court.

■ 5—Courts may exercise their power to overrule a decision in an earlier case wholly prospectively and deny retroactive effect to an overruling decision, without violating the doctrine of separation of powers since it has been acknowledged that the Constitution, in not prohibiting nor requiring retrospective effect, has no voice upon the subject. See Great Northern R. Co. v. Sunburst Oil and Refinery, supra; also Washington State Finance Committee v. Martin (1963) 62 Wash.2d 645, 384 P.2d 833, which is illustrative of the remarks made in support of purely prospective overruling.

■ 6—There was no Federal Constitutional error in the decision of the Supreme Court of Puerto Rico affirming petitioner's conviction. The Trial judge may, in his instructions, refer to the deep interest a defendant has in his own case. Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709. In this case the court, in sustaining an instruction similar to the one at bar, said the following:

"By the act of March 16, 1878 (20 Stat. 30), a defendant in a criminal case, may 'at his own request but not otherwise be a competent witness.' Under that statute it is a matter of choice whether he become a witness or not, and his failure to accept the privilege 'shall not create any presumption against him.' This forbids all comment in the presence of the jury upon his omission to testify."

"On the other hand, if he avail himself of this privilege, his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness. Assuming the position of a witness, he is entitled to all its rights and protections,

and is subject to all its criticisms and burdens. \* \* \* "

"It is within the province of the court to call the attention of the jury to any matters which legitimately affect his testimony and his credibility. This does not imply that the court may arbitrarily single out his testimony, and denounce it as false. The fact that he is a defendant does not condemn him as unworthy of belief, but at the same time it creates an interest greater than that of any other witness and to that extent affects the question of credibility. It is therefore a matter properly to be suggested by the court to the jury". Pages 304–305–306, 15 S.Ct. page 611.

Further cases have followed the rule laid down in Reagan. Schulze v. United States, (1959 CA Cal.) 259 F. 189; United States v. Sullivan, 329 F.2d 755, cert. den. 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); Caldwell v. United States, 338 F.2d 385, cert. den. 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277; Taylor v. United States, 390 F.2d 278, 285 (1968). In the latter case the court said:

"The instruction challenged in Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709, was more specifically directed to the defendant than was the one employed in the present case.[3] That instruction referred to a direct and deep 'personal interest', the strong temptation 'to color, pervert, or withhold the facts', and the jury's duty to determine how far, if at all, the defendant's testimony is worthy of credit. Yet pp. 305–311, 15 S.Ct. 610, a unanimous Court found no prejudicial fault. It described the instruction as one laying down a general rule and then calling attention to the fact of the defendant's personal interest.

It said, 'This clearly is unobjectionable'." pp. 284, 285.

7—The cases of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, are not applicable here. In the former, the Supreme Court of the United States held that the Fifth Amendment of the United States prohibits a commentary by the judge or prosecutor on a defendant's failure to testify in his own behalf. The latter held, that such a comment is not a harmless error under the Constitution of the United States. Not applicable to this point, also, are the other cases cited by petitioner on his petition.

Rather controlling in this area is Reagan v. United States, supra, which has remained an authority since 1895.

Therefore, the Order to Show Cause issued is dismissed and the petition for a writ of habeas corpus is denied.

It is so ordered.

---

3. "When defendant in a case of this kind takes the stand, which he has a perfect right to do, he is subjected to all the obligations of witness, and his testimony is to be treated like the testimony of any other witness; that is to say, it will be for you to say, remembering the matter of his testimony, and the manner in which

he gave it, his cross-examination, and everything else in the case, whether or not he told the truth. Then, again it is for you to remember, you have a perfect right to do so, the very grave interest a defendant has in the case. As he places himself as witness, he stands like any other witness".